(C. D. 674)

B. A. McKenzie & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided August 10, 1942)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Frank X. O'Donnell, Jr.,* and *Richard F. Weeks,* special attorneys), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at Tacoma, a subport of the port of Seattle, brought to recover

certain customs duties alleged to have been improperly exacted on a particular importation of steel saw plates. Duty was levied thereon at the appropriate rates under paragraphs 304, 305, and 308, plus additional duties of $\frac{2}{10}$ of 1 cent per pound under the following provision in paragraph 315 of the Tariff Act of 1930:

* * * and on all strips, plates, or sheets of iron or steel of whatever shape, other than polished, planished, or glanced sheet iron or sheet steel, which are cold hammered, blued, brightened, tempered, or polished by any process to such perfected surface finish or polish better than the grade of cold rolled, smoothed only, there shall be paid two-tenths of one cent per pound in addition to the rates provided on plates, strips, or sheets of iron or steel of common or black finish of corresponding thickness or value.

No question is raised as to the correctness of the classification of the collector made under said paragraphs 304, 305, and 308, the only question at issue being as to whether or not the imported steel plates are subject to the additional duty of $\frac{2}{10}$ of 1 cent per pound under the above-quoted provision in paragraph 315.

At the first hearing, held at Tacoma, Wash., on October 27, 1940, a sample of the imported merchandise was admitted in evidence as plaintiff's exhibit 1.

At the second hearing, held at Tacoma on November 14, 1941, the following colloquy took place:

Mr. TUTTLE. * * *.

    *      *      *      *      *      *      *

Plaintiff is now willing to submit the case on a stipulation which we believe raises the question of law as to whether the additional duty of two-tenths of 1 cent per pound applies to a plate which even though it has been tempered does not have a perfected surface finish or polish better than the grade of cold rolled, smoothed only.

I offer to stipulate with counsel for the Government that Exhibit 1 which consists of a saw plate has been tempered but that it does not have a perfected surface finish or polish better than the grade of cold rolled, smoothed only.

Mr. O'DONNELL. On the advice of the examiner, I will so stipulate.

The case was then submitted by both sides.

Counsel for the plaintiff in their brief filed herein cite the decision in *L. R. Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239, as here controlling. There, the appellate court had before it for construction the following provision in paragraph 1456 of the Tariff Act of 1922: "umbrellas, parasols, and sunshades covered with material other than paper or lace, not embroidered or appliqued, * * *." The appellate court held that the words "covered with material other than paper or lace," etc., applied to parasols as well as to sunshades. In rendering its decision, despite the fact that no comma occurred after the word "sunshades" the court based its conclusion solely on the ground of the congressional history of the paragraph, which is recited at great length in said decision.

In this connection, counsel for the plaintiff also call attention to the following statement with reference to paragraph 315 of the Tariff Act of 1922, found in the Summary of Tariff Information, 1929, schedule 3, page 661:

Provision was also made in this paragraph for steel products which have been given a high degree of finish by cold rolling, cold hammering, bluing, brightening, etc.

In our opinion, however, this statement rather disproves than supports the contention of counsel for the plaintiff.

True, it is obvious that the Tariff Commission took it for granted that the *proviso* then under discussion related only to products with "a high degree of finish." However, it is to be noted that cold rolling, cold hammering, bluing, and tempering, are finishing processes.

Moreover, as aptly pointed out by counsel for the Government, to follow the contention advanced by counsel for the plaintiff to its logical conclusion would result in an absurdity. Taking into account the dictionary definition of cold hammering, bluing, and tempering, it is difficult to see how such processes could possibly result in "such perfected surface finish or polish better than the grade of cold rolling."

Irrespective of the question of congressional history which, as we have already indicated, does not support the contention of counsel for the plaintiff, we are satisfied that the *proviso* to paragraph 315 of the Tariff Act of 1930 is in no sense ambiguous, so that consideration of legislative history is unnecessary to determine the intent of the Congress. *F. Mastronardi, Inc.* v. *United States*, 27 C. C. P. A. 350, C. A. D. 110; *United States* v. *H. J. Heinz Co.*, 26 C. C. P. A. 9, T. D. 49557.

As has already been stated, the merchandise at bar concededly consists of steel plates which have been tempered, and therefore falls squarely within the class of articles enumerated in said *proviso*. The language employed clearly indicates that the additional duty of $\frac{3}{10}$ of 1 cent per pound should apply to steel plates which have been cold-hammered, or to those which have been blued, or brightened, or tempered, or polished, to a certain prescribed surface finish. Any other interpretation of the language of said *proviso* would do violence to the elementary rules of grammatical as well as statutory construction. *Breck & Son* v. *United States*, 2 Ct. Cust. Appls. 26, T. D. 31576.

Upon the agreed facts and the law applicable thereto we hold that all claims of the plaintiff must be and the same hereby are overruled.